UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

JAMES PIPPER,

    Plaintiff,

CASE NO.:

JOHN TOLFREE HOSPITAL d/b/a WEST BRANCH REGIONAL MEDICAL CENTER, P.C., MANDHIR JAMWAL, M.D. & PRIMARY CARE, P.C.

HON:

    Defendants.

---

Scott Weidenfeller (P56001)
Weidenfeller Firm
143 Cadycentre, #300
Northville, MI 48167
(248) 238-4066
Scott@MichiganMedicalLawyer.com

## COMPLAINT

NOW COMES PLAINTIFF, JAMES PIPPER (hereinafter referred to as "PLAINTIFF"), by and through his attorneys, the WEIDENFELLER FIRM, and brings his Complaint against the above named Defendants, and states as follows:

### COUNT I - PARTIES, JURIDICTION & VENUE

1.    Plaintiff, JAMES PIPPER, is and was, at all relevant times herein, a resident of the County of Maricopa, State of Arizona.

2.    Defendant, JOHN TOLFREE HOSPITAL D/B/A WEST BRANCH REGIONAL MEDICAL CENTER, P.C. (alternatively referred to as "DEFENDANT" "DEFENDANTS" OR "DEFENDANT HOSPITAL"), is and was a licensed healthcare

facility with a principal place of business and operating within the County of Ogemaw, State of Michigan.

3. Defendant, MANDHIR JAMWAL, M.D. (alternatively referred to as "DEFENDANT" "DEFENDANTS"), is a licensed physician who was practicing medicine within the County of Ogemaw, State of Michigan, at all relevant times herein.

4. Defendant, PRIMARY CARE, P.C. (alternatively referred to as "DEFENDANT" "DEFENDANTS" OR "DEFENDANT PRIMARY CARE"), was a licensed healthcare facility with a principle place of business in the County of Ogemaw, State of Michigan, at all relevant times herein.

5. This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds the statutory amount of $75,000.00, exclusive of interest and costs.

6. Venue is proper in this Court as both the cause of action and the original injury to the PLAINTIFF arose in the County of Ogemaw, State of Michigan.

## COUNT II - GENERAL ALLEGATIONS

7. PLAINTIFF incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

8. That at all times pertinent herein, including, July 6th, 7th and 8th of 2014, a physician-patient relationship existed between all DEFENDANTS and PLAINTIFF JAMES PIPPER.

9. That while PLAINTIFF was a patient in the emergency department at DEFENDANT HOSPITAL on or about July 6, 2014, DEFENDANT MANDHIR JAMWAL,

M.D., owed the PLAINTIFF the duty to possess that reasonable degree of learning and skill that is ordinarily possessed by physicians specializing in emergency medicine and to use reasonable care and diligence in the exercise of his skill and the application of his learning in the care and treatment of PLAINTFF, within and in compliance with the applicable standard of care.

10. That following PLAINTIFF'S, transfer from the DEFENDANT HOSPITAL'S Emergency Department, as an "inpatient admission", DEFENDANT MANDHIR JAMWAL, M.D., owed the PLAINTIFF the duty to possess that reasonable degree of learning and skill that is ordinarily possessed by physicians specializing in family medicine and to use reasonable care and diligence in the exercise of his skill and the application of his learning in the care and treatment of PLAINTIFF, within and in compliance with the applicable standard of care.

11. That at all times pertinent herein, DEFENDANT JOHN TOLFREE HOSPITAL D/B/A WEST BRANCH REGIONAL MEDICAL CENTER, P.C., owed PLAINTIFF the duty to provide him with competent physician(s), nurses and other licensed healthcare professionals to diagnose and treat his respective medical conditions in accordance and within the applicable standards of care pursuant to MCL 333.20141.

12. That at all times herein, including but not limited to, July 6th, 7th and 8th of 2014, DEFENDANT MANDHIR JAMWAL, M.D., was the actual employee and/or ostensible agent of DEFENDANT JOHN TOLFREE HOSPITAL D/B/A WEST BRANCH REGIONAL MEDICAL CENTER, P.C., and as such, DEFENDANT JOHN TOLFREE HOSPITAL D/B/A WEST BRANCH REGIONAL MEDICAL CENTER, P.C., was and is

responsible through the doctrine of respondeat superior and/or vicarious liability for the actions of DEFENDANT MANDHIR JAMWAHL, M.D.

13. That at all times pertinent herein, DEFENDANT PRIMARY CARE, owed PLAINTIFF the duty to provide him with competent physician(s), nurses and other licensed healthcare professionals to diagnose and treat his respective medical conditions in accordance and within the applicable standards of care pursuant to MCL 333.20141.

14. That at all times relevant herein, including but not limited to, July 6th, 7th and 8th of 2014, DEFENDANT MANDHIR JAMWAL, M.D., was the actual employee and/or ostensible agent of DEFENDANT PRIMARY CARE, P.C., and as such, DEFENDANT PRIMARY CARE P.C., is responsible through the doctrine of respondeat superior and/or vicarious liability for the actions of DEFENDANT MANDHIR JAMWAHL, M.D.

## COUNT III – FACTUAL ALLEGATIONS

15. PLAINTIFF incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

16. On July 6th of 2014, PLAINTIFF suffered a hamstring tear while waterskiing.

17. Upon arrival to DEFENDANT HOSPITAL, PLAINTIFF was treated by DEFENDANT MANDHIR JAMWAL, M.D., in the Emergency Department.

18. Examination revealed a hematoma in the posterior right thigh and venous doppler testing revealed adequate flow within the deep venous structures with extensive thrombus in the greater saphenous venous system.

19. At approximately 8:37 p.m., DEFENDANT MANDHIR JAMWAHL, M.D., issued an order for Lovenox DVT/PE treatment protocol. PLAINTIFF was given 5mg Warfarin (Coumadin) orally at approximately 8:41p.m.

20. PLAINTIFF was then admitted as an inpatient to DEFENDANT HOSPITAL, under the care of the hospital staff and DEFENDANT MANDHIR JAMWAHL, M.D.

21. On July 7th of 2014, at 1:21 p.m., an MRI revealed, among other findings, that PLAINTIFF suffered full thickness muscle tears in his right leg, which caused a large hematoma and a large amount of edema.

22. On the evening of July 7th, PLAINTIFF'S right leg pain and swelling continued to increase resulting in limited movement. Lab results returned at 11:16 p.m. evidenced an abnormally low red blood count.

23. PLAINTIFF'S right leg pain continued to increase, noted as: "10/10" at 1:53 a.m., on July 8, 2014. PLAINTIFF was given multiple doses of pain medication, including, morphine, norco and toradol over the next several hours.

24. On the morning of July 8th, PLAINTIFF was evaluated by Patrick Morse, M.D., who contacted DEFENDANT MANDHIR JAMWAHL, M.D.  Due to the development of compartment syndrome in PLAINTIFF'S right leg, DEFENDANT MANDHIR JAMWAHL, M.D. "held" PLAINTIFF'S antiocoagulation (i.e., Coumadin and Lovenox) and ordered the transfer of PLAINTIFF.

25. PLAINTIFF was transferred by ambulance to Henry Ford Hospital in Detroit, Michigan, arriving at approximately 11:20 a.m., on July 8, 2014. PLAINTIFF underwent a four (4) compartment fasciotomy surgery with subsequent operations for

muscle repair, closure of fasciotomy incisions, placement of a wound vac and, ultimately, closure of the remaining wounds and removal of the wound vac.

26. On July 21, 2014, PLAINTIFF was discharged from Henry Ford Hospital and admitted to the Rehabilitation Institute of Michigan.

27. On or about July 30, 2014, PLAINTIFF was discharged from the Rehabilitation Institute of Michigan, with instructions to continue home therapy for his right foot drop and to continue treatment in Phoenix, Arizona.

28. Today, PLAINTIFF has permanent residual neurologic deficits (i.e., right foot drop), as a result of his compartment syndrome and resultant nerve injury.

## COUNT IV – PROFESSIONAL NEGLIGENCE

29. PLAINTIFF incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows.

30. That DEFENDANT MANDHIR JAMWAL, M.D., breached his duties and obligations owed to PLAINTIFF and at variance with the applicable standard of care for emergency medicine, was professionally negligent on or about July 6th of 2014, while treating PLAINTIFF in the emergency department, for failing to take the following actions:

   a. To timely and properly appreciate the distinction between thrombus in a superficial vein and DVT;

   b. To timely and properly refrain from administering anticoagulation therapy;

   c. To timely and properly appreciate the potential for the development of compartment syndrome with continued bleeding;

   d. Any and all other standard of care violations that may become known through the course of further discovery in this matter.

31. That DEFENDANT MANDHIR JAMWAL, M.D., breached his duties and obligations owed to PLAINTIFF and at variance with the applicable standard of care for

family medicine, was professionally negligent on or about July 6th, July 7th and July 8th of 2014, while treating PLAINTIFF after his admission to DEFENDANT HOSPITAL, for failing to take the following actions:

    a.    To timely and properly refrain from administering anticoagulation therapy;

    b.    To timely and properly discontinue anticoagulation therapy, including, but not limited to, upon admission and thereafter;

    c.    To timely and properly request a vascular surgical consultation;

    d.    To timely and properly follow through with, a hematology consultation;

    e.    To timely and properly recognize the importance of decreasing hemoglobin and hematocrit levels;

    f.    To timely and properly appreciate the distinction between thrombus in a superficial vein and DVT;

    g.    To timely and properly appreciate the potential for the development of compartment syndrome with continued bleeding;

    h.    To timely and properly make patient transfer arrangements;

    i.    To timely and properly recognize symptoms of developing compartment syndrome;

    j.    To timely and properly treat the patient;

    k.    To timely and properly perform repeat clinical examinations;

    l.    Any and all other standard of care violations that may become known throughout the course of discovery in this matter.

32.    That DEFENDANT HOSPITAL, acting through its employees and/or agents, including, its staff of physician assistants, nurses, therapists and other licensed health care professionals, including, but not limited to, DEFENDANT DR. JAMWAL and M. Waters, RN, breached their respective duties and obligations which were owed to

PLAINTIFF, and at variance with the applicable standards of care, were professionally negligent on July 6th, July 7th and July 8th of 2014, by failing to:

    a.    To timely and properly refrain from administering anticoagulation therapy;

    b.    To timely and properly discontinue anticoagulation therapy, including, but not limited to, upon admission and thereafter;

    c.    To timely and properly request a vascular surgical consultation;

    d.    To timely and properly follow through with, a hematology consultation;

    e.    To timely and properly recognize the importance of decreasing hemoglobin and hematocrit levels;

    f.    To timely and properly appreciate the distinction between thrombus in a superficial vein and DVT;

    g.    To timely and properly appreciate the potential for the development of compartment syndrome with continued bleeding;

    h.    To timely and properly make patient transfer arrangements;

    i.    To timely and properly recognize symptoms of developing compartment syndrome;

    j.    To timely and properly treat the patient;

    k.    To timely and properly perform repeat clinical examinations;

    l.    To timely and properly notify the attending physician of a significant drop in hemoglobin and hematocrit levels on the evening of July 7th, 2014, and thereafter;

    o.    To timely and properly contact the attending physician on the evening of July 7th and into the early morning hours of July 8th when patient complaints of pain were increasing, including, frequent administration of pain medication;

    p.    To timely and properly recognize the potential for complications related to internal bleeding and to either contact the attending physician or utilize the chain of command to obtain a prompt physician evaluation of the patient;

  q. To timely and properly monitor the patient;

  r. Any and all other standard of care violation(s), which may become known throughout the course of further discovery in this matter.

33. That DEFENDANT PRIMARY CARE, acting through its employees and/or agents, including, but not limited to, DEFENDANT DR. JAMWAL, breached its respective duties and obligations owed to the PLAINTIFF, and at variance with the applicable standards of care, was professionally negligent on July 6th, July 7th and July 8th of 2014, by failing to:

  a. To timely and properly refrain from administering anticoagulation therapy;

  b. To timely and properly discontinue anticoagulation therapy, including, but not limited to, upon admission and thereafter;

  c. To timely and properly request a vascular surgical consultation;

  d. To timely and properly follow through with, a hematology consultation;

  e. To timely and properly recognize the importance of decreasing hemoglobin and hematocrit levels;

  f. To timely and properly appreciate the distinction between thrombus in a superficial vein and DVT;

  g. To timely and properly appreciate the potential for the development of compartment syndrome with continued bleeding;

  h. To timely and properly make patient transfer arrangements;

  i. To timely and properly recognize symptoms of developing compartment syndrome;

  j. To timely and properly treat the patient;

  k. To timely and properly perform repeat clinical examinations;

  l. Any and all other standard of care violations that may become known throughout the course of discovery in this matter.

34. That as a direct and proximate result of the professional negligence of the DEFENDANTS, as noted above, in paragraphs number thirty (30), through thirty-three (33), jointly and severally, the bleeding in the PLAINTIFF'S right leg continued and increased, developing into compartment syndrome leading and leading to permanent muscle and nerve damage, resulting a permanent right foot drop.

## COUNT V – DAMAGES

35. PLAINTIFF repeats and realleges each and every previous paragraph of this Complaint, as though fully set forth herein.

36. That as a direct and the proximate result of the professional negligence of the DEFENDANTS, jointly and severally, as hereinbefore alleged, PLAINTIFF suffered severe and permanent injuries and damages, resulting in past and future economic and non-economic losses to PLAINTIFF. PLAINTIFF'S economic losses include, but are not limited to, past and future medical, prescriptive and therapeutic expenses, loss of household services, losses related to attendant care and non-economic harms and losses, including, but not limited to, shock, fright, pain and suffering, loss of enjoyment of life, scarring, disfigurement, nerve damage and a right foot drop, all of which are permanent in nature.

37. PLAINTIFF makes a claim for any and all losses, economic, non-economic, past and future, which are recoverable pursuant to statutory and common law in the amount of seven hundred and fifty thousand dollars ($750,000), not including, any attorney's fees, interest, case evaluation sanctions or costs that may be compensable through the course of this litigation.

WHEREFORE, PLAINTIFF demands judgment against DEFENDANTS for the full amount of his economic, non-economic and compensatory damages, together with any statutory, court or otherwise allowable interest, costs, sanctions or attorney's fees, as this Court deems proper.

Respectfully submitted,

/s/ Scott Weidenfeller
Scott Weidenfeller (P56001)
Attorney for Plaintiff
Weidenfeller Firm
143 Cadycentre, #300
Northville, MI 48167
(248) 238-4066

Dated: December 14, 2016